## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

v.                                   No. CR 06-2403 RB

PAUL OTHELLO SMALLS,
GLENN DELL COOK,
a/k/a "Deuce," and
WALTER MELGAR-DIAZ,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On November 16, 2006, the grand jury returned the Indictment in this case, charging each

Defendant with: (1) Conspiracy to Retaliate Against a Witness, Victim or an Informant; (2)

Retaliating Against a Witness, Victim or an Informant; (3) Conspiracy to Tamper with a Witness,

Victim or an Informant; (4) Tampering with a Witness, Victim or an Informant; and (5) Killing a

Person Aiding a Federal Investigation.  (Doc. 1)

Standing discovery orders were issued on December 12, 2006 and January 2, 2007.  (Docs.

14 and 19.)  On May 9, 2007, the United States filed a Notice of Intent Not to Seek the Death

Penalty.  (Doc. 93.)  Defendant Melgar-Diaz pleaded guilty pursuant to a sealed plea agreement on

October 26, 2007.  (Docs. 166; 169.)

This matter comes before the Court on the following motions:

A.    Defendant Smalls' and Defendant Cook's Motion for Disclosure of Prior Acts Evidence and
Memorandum in Support (Doc. 127), filed on October 9, 2007;

B.    Defendant Smalls' and Defendant Cook's Motion for Access to Jail Cell and Medical Unit
and Supporting Authorities (Doc. 128), filed on October 9, 2007;

C.      Defendant Smalls' and Defendant Cook's Motion for Bill of Particulars and Memorandum in Support (Doc. 129), filed on October 9, 2007;

D.      Defendant Smalls' and Defendant Cook's Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives and Cooperating Individuals and Motion for Disclosure of Exculpatory Evidence and Notice to the Government of Exculpatory Evidence Requested Concerning Government's Use of Informants, Operatives and Cooperating Individuals and Memorandum in Support (Doc. 130), filed on October 9, 2007;

E.      Defendant Smalls' and Defendant Cook's Motion for Disclosure of Exculpatory Evidence and Notice to the Government of Specific Exculpatory Evidence Requested (Doc. 131), filed on October 9, 2007;

F.      Defendant Smalls' and Defendant Cook's Motion for Disclosure of Co-Conspirators' Statements and for a James Hearing and Supporting Authority (Doc. 132), filed on October 9, 2007;

G.      Defendant Smalls' and Defendant Cook's Motion for the Automatic and/or Early Production of Jencks/Rule 26.2 Statements and Memorandum in Support (Doc. 133), filed on October 9, 2007;

H.      Defendant Cook's Motion for Discovery Regarding FBI DNA Test #1 Pertaining to Automated STR Testing (Doc. 134), filed on October 9, 2007;

I.      Defendant Cook's and Defendant Smalls' Motion for Order for Specification of Co-conspirator Statements and a Pre-trial Hearing on the Admissibility of Such Statements (Doc. 135), filed on October 9, 2007;

J.      Defendant Cook's and Defendant Smalls' Motion and Supporting Memorandum for Discovery of Records or Reports Relating to Facts or Data Underlying Expert Opinions (Doc. 137), filed on October 9, 2007;

K.      Defendant Cook's Motion for Disclosure of All Photo Books and Photographic Identifications (Doc. 138), filed on October 9, 2007;

L.      Defendant Cook's Motion and Supporting Memorandum to Produce Favorable Evidence and Request for in Camera Review (Doc. 140), filed on October 9, 2007;

M.      Defendant Cook's Motion for Discovery Regarding FBI DNA Test #2 Pertaining to Automated Real Time PCR Quantitation (Doc. 141), filed on October 9, 2007;

N.      Defendant Cook's Motion Under *Giglio* for Disclosure of Information Concerning Inducements, Incentives, Compensation or Other Assistance Provided to Government Witnesses, as Well as all Information Necessary to Effectively Cross-Examine Government Witnesses (Doc. 143), filed on October 9, 2007;

O.      Defendant Cook's and Defendant Smalls' Motion for the Disclosure of Personnel Files and Supporting Authority (Doc. 144), filed on October 9, 2007; and

P.      Defendant Cook's Motion to Disclose All Evidence of Collaboration Between the U.S. Attorney's Office and Civil Defense Lawyers for the DACDC (Doc. 145), filed on October 9, 2007.

Defendant Smalls has joined in Defendant Cook's motions (Docs. 146-154).

On October 29, 2007, the United States filed an Omnibus Response to Defendants' Discovery Motions.  (Doc. 163).  Defendants filed replies in support of some of the motions.  (Docs. 172-174).  On January 11, 2008, I heard argument on the motions.  Having considered the motions, briefs, arguments, and relevant authority, I find that the various discovery requests should be granted and denied as discussed herein.

## I.      PRELIMINARY OBSERVATIONS.

At the outset, it is important to note that this is not a capital case.  While Defendants persist in using the term "capital case," (*see, e.g.,* Doc. 130), they are not entitled to the procedural benefits they would otherwise receive in a capital case since the United States announced that it would not seek the death penalty.  *United States v. Maestas*, 523 F.2d 316, 319 (10th Cir. 1975); *see also United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir. 1998) (holding that defendant "was properly denied benefits afforded to a capital defendant because the United States stipulated that it would not seek the death penalty and thereby transformed this case into a non-capital proceeding.").  Additionally, many of the issues raised by Defendants in their discovery motions are covered by the standing discovery orders issued in this case.

## II.     OVERVIEW OF GENERAL LAW ON DISCOVERY.

Many of the requests in the various motions overlap and rely on more than one legal principle. Therefore, before addressing each of the motions individually, I will provide an overview of the various legal foundations that inform my decisions on each discovery motion.

### A.     *Brady*

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, the accused must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense. *See Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007). There is no *Brady* violation where the defendant knew or should have known of the material, exculpatory information or where the information was available to him from another source. *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). Nevertheless, even where the defendant never requested exculpatory evidence, the government has a duty to volunteer exculpatory evidence. *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995). The Constitution, however, does not demand an open file policy. *See id.* at 437. *See also Smith v. Sec'y Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995) (noting that *Brady* does not require prosecution to divulge every possible shred of evidence that could conceivably benefit defendant). "[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure" and it acts at its own peril by failing to comply adequately with an order requiring disclosure of *Brady* material. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

The "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Thus, to be "material," a defendant does not need to show that the evidence, if disclosed, would have resulted in his acquittal; rather, he must show only that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434-35. In evaluating a *Brady* claim, a court must consider the cumulative effect of all material withheld by the government. *See id.* at 436-37. The prosecution thus has the responsibility "to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437.

The Constitution, however, "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667 (1957)). A defendant's mere allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). The *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant, because there "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). *See also United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("[T]here is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the

outcome of the trial, does not establish 'materiality' in the constitutional sense.") (internal quotations and citations omitted), *reversed on other grounds by Bagley*, 473 U.S. 667; *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) ("*Brady* does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up.").

    *Brady* only requires disclosure of information in the government's possession or knowledge, whether actual or constructive. *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999); *Smith*, 50 F.3d at 825 n.36 (noting that, because the district attorney's office had actual knowledge that there was a separate investigation by authorities in a separate county, it was reasonable to impute knowledge possessed by the separate county to prosecution). While a prosecutor cannot avoid his *Brady* obligations by keeping himself in ignorance or compartmentalizing information, *see Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984), neither does the government have an affirmative duty under *Brady* to seek out information that is not in its or its agents' possession. *See Graham*, 484 F.3d at 415-18 (stating there is no affirmative duty to discover information in possession of independent, cooperating witness and not in government's possession); *United States v. Moore*, 25 F.3d 563, 569 (7th Cir. 1994) (concluding *Brady* was not violated where both parties learned after trial that government witness had previous conviction for obstruction of justice and government did not possess knowledge of this information until after trial); *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1995) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant.").

    *Brady* is nonetheless interpreted broadly in order to encourage prosecutors to carry out their "duty to *learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (quoting *Kyles*, 514 U.S. at 437-38) (emphasis added by Tenth Circuit). "Information possessed by

other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case." *Beers*, 189 F.3d at 1304.  The Tenth Circuit in *Beers* held, however, that the state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of *Brady* where there is no joint investigation by federal and state officials.  *See id.  See also United States v. Romo*, 914 F.2d 889, 899 (7th Cir. 1990) (holding that court did not err in denying request to compel prosecutors to make various inquiries of local police in absence of showing by defendant that specific material, exculpatory information existed of which government knew).  The *Beers* court, however, left open the question of whether knowledge possessed by state officials would be imputed to the federal prosecutor where the federal government participated in a joint investigation with state officials.  *See Beers*, 189 F.3d at 1304 n.2.

At least one court has held that a duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is a reasonable prospect or notice of finding exculpatory evidence.  *See United States v. Brooks*, 966 F.2d 1500, 1502-04 (D.C. Cir. 1992).  The Tenth Circuit quoted this holding from *Brooks* and indicated its approval, but ultimately declined to definitively resolve the issue.  *See Combs*, 267 F.3d at 1175.  It is, therefore, an open question in this circuit as to the extent of the government's duty to investigate files of state agencies participating in a joint investigation with federal officials.

**B.     Giglio**

Impeachment evidence falls under *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  *Brady* obligates the prosecution to disclose "evidence affecting credibility."  *Id.*

C.      **The Jencks Act**

The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is "in the possession of the United States" once that witness has testified.  18 U.S.C. § 3500(a) & (b).  The Act "manifests the general statutory aim to restrict the use of such statements to impeachment."  *Palermo v. United States*, 360 U.S. 343, 349 (1959).  The purpose of the Act is to protect the government's files from unwarranted disclosure and to allow defendants access to materials usable for impeachment purposes.  *See United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976).

In pertinent part, the Act provides as follows:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.

> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500.

The Jencks Act further defines a witness "statement" as (1) a written statement made by the witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording or transcription thereof, that is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement or transcription made by the witness to a grand jury.  *Id.* § 3500(e).  The defendant has the burden to show that particular materials qualify as "statements" and that the

purported statements relate to the subject matter of the witness' testimony.  *Smaldone*, 544 F.2d at 460.

The Jencks Act narrowly defines "statements."  *Id.* 544 F.2d at 461.  The government is not required under the Act to produce an agent's informal description of witness testimony.  *See Palermo*, 360 U.S. at 355 & n.12 (holding that agent's brief summary of witness' statements prepared after interview did not constitute "statements" under Jencks Act); *Smaldone*, 544 F.2d at 461.  Statements made by a witness and summarized by a third person, however, can be Jencks material, but only if the witness has signed or otherwise adopted or approved them.  *See Campbell v. United States*, 365 U.S. 85, 93-94 (1961); *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (explaining that interviewer's raw notes, and anything prepared from notes (such as FBI 302) are not Jencks Act statements of witness unless they are substantially verbatim and contemporaneously recorded, or were signed or otherwise ratified by witness); *United States v. Gates*, 557 F.2d 1086, 1089 (5th Cir. 1977) (stating that notes are not Jencks Act statements until shown to and affirmed by witness).[1]  A witness adopts a statement if it is read back to and verified, approved, or acknowledged as true by the witness.  *See United States v. Jackson*, 850 F.Supp. 1481, 1508 (D. Kan. 1994).  On the other hand, substantially verbatim transcriptions made contemporaneously with a witness' oral statement require no adoption or approval to be Jencks material.  *See* 18 U.S.C. § 3500(e)(2).

Rule 26.2 contains the substance of the Jencks Act.  *See* Fed. R. Crim. P. 26.2, advisory committee notes.  Rule 26.2 also provides for production of statements of defense witnesses at trial in essentially the same manner as required for statements of government witnesses.  *See id.*

---

[1] If the agent who made the notes, however, is called as a witness, the statements may constitute Jencks material, depending on the scope of the agent's testimony on direct examination.  *See Jordan*, 316 F.3d at 1252.

**D.**     **Rule 16**

Rule 16(a)(1)(E) sets out the types of information that the government must disclose to the defendant, upon his request:

> books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* The term "defense" means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged. *See United States v. Armstrong*, 517 U.S. 456, 462 (1996). To show materiality, the evidence must bear some abstract logical relationship to the issues in the case such that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his favor. *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 351 (internal quotations omitted). Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16. *Mandel*, 914 F.2d at 1219; *Jordan*,

10

316 F.3d at 1250 (noting that defendant must make specific request for item together with explanation for how it will be helpful to defense).

Rule 16(a)(1)(E) only applies where the documents are within the federal government's actual possession, custody, or control. *See United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992). A document is within the possession of the government, if the prosecutor has knowledge of it and access to it, and a "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). State-gathered evidence only becomes subject to Rule 16(a)(1)(E)'s disclosure obligation "when it passes into federal possession." *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007).

Rule 16(a)(2) limits the scope of discoverable materials: "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Rule 16(a)(2) also clarifies that Rule 16 does not authorize the disclosure of statements made by prospective witnesses, except as provided in 18 U.S.C. § 3500. The term "government agent" has been construed as including non-federal personnel whose work contributes to a federal criminal case, such as local law enforcement officers. *See Fort*, 472 F.3d at 1113, 1119-20. Local police reports thus qualify for the Rule 16(a)(2) discovery exemption when they are turned over to the federal prosecutor for use in a federal investigation. *See id.* at 1109, 1119-20. Rule 16(a)(2) also exempts FBI reports (Form 302s) from disclosure. *See id.* at 1119 (citing *Jordan*, 316 F.3d at 1227 n.17).

11

### E.      Rule 57(b)

Federal Rule of Criminal Procedure 57(b) is often cited for the court's inherent authority to regulate procedures beyond the scope of the rules themselves, so long as they are consistent with those rules.  *See, e.g., United States v. Edelin*, 134 F.Supp.2d 45, 48 (D.D.C. 2001).  Rule 57(b) provides: "A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."  Fed. R. Crim. P. 57(b).

### III.    ANALYSIS.

#### A.      Defendants' Motion for Disclosure of Prior Acts Evidence and Memorandum in Support (Doc. 127).

Defendants move for an order requiring the government to disclose any Fed. R. Evid. 404(b) evidence that it intends to offer at trial at least 30 days prior to trial.  The United States responds that it has produced discovery relating to Defendants' criminal histories and it is unaware of any potential 404(b) evidence that has not been disclosed.  The United States is aware of its ongoing disclosure obligations and has agreed to disclose any such information promptly.

The admissibility of Rule 404(b) evidence is generally determined through motions in limine.  The Scheduling Order provides that motions in limine are due 30 days prior to trial.  In order to allow sufficient time to address the admissibility of Rule 404(b) evidence, the United States is directed to disclose any Fed. R. Evid. 404(b) evidence that it intends to offer at trial no later than 40 days prior to the commencement of jury selection.

#### B.      Defendants' Motion for Access to Jail Cell and Medical Unit and Supporting Authorities (Doc. 128).

Counsel stated at the hearing that this motion was moot.  Accordingly, this motion will be denied.

**C.      Defendants' Motion for Bill of Particulars and Memorandum in Support (Doc. 129).**

This Motion for Bill of Particulars differs from Defendant Smalls' previously denied Motion for Bill of Particulars (Doc. 52) and both Defendants' pending Motion for Dismissal for Insufficiency of Notice Under the Sixth Amendment or, In the Alternative, for a Bill of Particulars (Doc. 190) in that it primarily alleges that the Indictment (Doc. 1) is insufficient with regard to the conspiracy charges.  (Mot. Bill Particulars at ¶¶ 1-10).  Specifically, Defendants contend "that a Bill of Particulars is necessary to enable them to understand and prepare their defense . . . without prejudicial surprise at trial."  (*Id.* at 1).  Defendants seek precise details about the alleged conspiracy, including the dates, times, locations, and descriptions of various alleged conspiratorial acts and the names, addresses, and phone numbers of potential witnesses.  (*See id.* at ¶¶ 1-10).  The United States argues that the Indictment "sufficiently . . . enable[s the Defendants] to prepare for trial."  (United States' Omnibus Resp. at 29).

"[An] indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. Proc. 7(c)(1).  An indictment is sufficient if it "sets forth the elements of the offense charged and sufficiently apprise[s] the defendant of the charges to enable him to prepare for trial."  *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992).  A court measures the sufficiency of an indictment according to "practical rather than technical considerations."  *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988).  "The [C]ourt may direct the United States to file a bill of particulars," Fed. R. Crim. Proc. 7(f), to "amplify" the indictment, but the Court has broad discretion in deciding whether to grant a motion for a bill of particulars, *Dunn*, 841 F.2d at 1029.

13

A bill of particulars is not a discovery device. *Dunn*, 841 F.2d at 1029. Instead, "[t]he purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Id.* A defendant is entitled to know the government's theory of the case, not all of the evidence underlying that theory. *Levine*, 983 F.2d at 167. The Court of Appeals will leave a district court's denial of a bill of particulars undisturbed unless the defendant is actually surprised and thereby prejudiced at trial. *Id.* at 166.

Here, the Indictment sufficiently apprises Defendants of the charges facing them, including the conspiracy charges. The Indictment clearly indicates that the United States believes that Defendants began to discuss killing Mr. Gantz on December 25, 2004 at the Doña Ana County Detention Center because the Defendants allegedly believed Mr. Gantz to be a "snitch." (Indictment at 1-4). Moreover, with great detail, the Indictment clearly describes the roles the United States believes each Defendant played in the culmination of the alleged conspiracy (the death of Mr. Gantz) during "the early morning hours of December 30, 2004." (*Id.* at 2). The United States' theory is clear, and the Court will not go beyond the law to require the United States to disclose evidence via a bill of particulars. As such, the Court finds the Indictment sufficient as to the conspiracy charges and declines Defendants' invitation to utilize Fed. R. Crim. Proc. 7(f) as a discovery device. Therefore, Defendants' Motion for Bill of Particulars is denied.[2]

**D.  Defendants' Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives and Cooperating Individuals and Motion for**

---

[2] The Court notes that many of the requests contained in Defendants' Motion for Bill of Particulars are more appropriately addressed in the context of Defendants' Motion for Disclosure of Co-Conspirators' Statements and for a *James* Hearing (Doc. 132).

14

**Disclosure of Exculpatory Evidence and Notice to the Government of Exculpatory Evidence Requested Concerning Government's Use of Informants, Operatives and Cooperating Individuals and Memorandum in Support (Doc. 130).**

The issues raised in this motion are addressed *infra* in Section III N, in connection with Defendants' Motion Under *Giglio* for Disclosure of Information Concerning Inducements, Incentives, Compensation or Other Assistance Provided to Government Witnesses, as Well as all Information Necessary to Effectively Cross-Examine Government Witnesses (Doc. 143). The same reasoning and rulings applied to such motion also apply to the instant motion.

**E.    Defendants' Motion for Disclosure of Exculpatory Evidence and Notice to the Government of Specific Exculpatory Evidence Requested (Doc. 131).**

The issues raised in this motion are addressed *infra* in Section III L, in connection with Defendants' Motion and Supporting Memorandum to Produce Favorable Evidence and Request for In Camera Review (Doc. 140). The same reasoning and rulings applied to such motion also apply to the instant motion.

**F.    Defendants' Motion for Disclosure of Coconspirators' Statements and for a *James*[3] Hearing and Supporting Authority (Doc. 132).**

Fed. R. Evid. 801(d)(2)(E) treats the statements of a coconspirator as non-hearsay and allows the Government to treat one coconspirator's statements as the admissions of another coconspirator/defendant.[4] *United States v. Williamson*, 53 F.3d 1500, 1517 (10th Cir. 1995). Proper

---

[3]  *See United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979).

[4]  The Court notes that though Defendants Smalls and Cook are entitled to their own conspiratorial statements made in response to interrogation under Fed. R. Crim. P. 16(a)(1)(A), they are not entitled to the conspiratorial statements of codefendants. *United States v. Roberts*, 811 F.2d 257, 258 (4th Cir. 1987) (en banc) (vacating a prior Fourth Circuit decision that read Fed. R. Crim. P. 16(a)(1)(A) and Fed. R. Evid. 801(d)(2)(E) *in pari materia*). *See also United States v. Boykins*, Nos. 89-3580, 89-3641, 89-3798, 1990 U.S. App. LEXIS 17602, at *21-22 (6th Cir. 1990) (unpublished); *United States v. Gaddis*, 877 F.2d 605, 610 (7th Cir. 1989); *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988); *United States v. Orr*, 825 F.2d 1537, 1541 (11th Cir. 1987).

application of Fed. R. Evid. 801(d)(2)(E), however, requires the court to make four factual findings before allowing the coconspirator statement into evidence. *See United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994). By a preponderance of the evidence, "[t]he court must determine that (1) . . . a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, . . . (3) the statements were made in the course of [the conspiracy,] and [(4) the statements were made] in furtherance of the conspiracy." *See id.*; *United States v. Stipe*, 653 F.2d 446, 449 n.4 (10th Cir. 1981). Moreover, although the court may base its findings, at least in part, upon the coconspirator statement(s) at issue, the court may not base its findings solely upon the coconspirator statement(s). Fed. R. Evid. 801(d)(2) ("The contents of the statement shall be considered but are not alone sufficient to establish the 'existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered.'"); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996). *See generally Bourjaily v. United States*, 483 U.S. 171 (1987). In other words, there must be some independent, corroborating evidence. *See Lopez-Gutierrez*, 83 F.3d at 1242. The Tenth Circuit defines independent evidence as "evidence other than the proffered coconspirator statements themselves." *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995) (internal brackets omitted).

Though the Tenth Circuit permits district courts to provisionally admit coconspirator statements as long as the Government presents the predicate conspiracy evidence during trial, the Tenth Circuit "strongly prefer[s]" that district courts conduct a *James* hearing in order to make the predicate factual findings prior to trial. *Owens*, 70 F.3d at 1123. *See also United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998) ("[W]e take this opportunity to reiterate our strong preference for *James* proceedings where the government relies on coconspirator statements.").

> The reason for this preference is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.'

*Urena*, 27 F.3d at 1491.

In *Owens*, the Tenth Circuit acknowledged the district courts' discretion to permit summary testimony in the context of a *James* hearing, but warned that "[d]espite the conclusion . . . in this case, we do not suggest there are no limits of any kind on the use of summary testimony or other summary evidence during a *James* hearing." 70 F.3d at 1125. Specifically, the Tenth Circuit has expressed concern about "the district court's ability to evaluate the . . . conversations in context or even to identify the speakers . . . because [the summary may] not adequately specify the particular coconspirator statements the government plan[s] to introduce at trial." *Id.*; *United States v. Roberts*, 14 F.3d 502, 514 (10th Cir. 1993). Finally, "if the defendants can show with a reasonable probability that a confidential informant actively participated in the crime charged, then the government must identify the informant at the *James* hearing." *United States v. Montenegro*, No. 01-1231, at 3 (D.N.M. Dec. 3, 2001) (brackets omitted) (order granting pretrial determination of admissibility of coconspirator statements); *see also Garcia v. United States*, 373 F.2d 806, 808 (10th Cir. 1967) (citing *Roviaro v. United States*, 353 U.S. 53 (1957)).

At oral argument on January 11, 2008, Defendants argued that the Court should conduct a *James* hearing "in a month or two." The Government requested that the Court hold a *James* hearing no earlier than two weeks prior to trial. Defendants request very specific information regarding "each and every" coconspirator statement "at least thirty days" prior to the *James* hearing. (Defs.' Mot. Disclosure Coconspirators' Statements & *James* Hr'g at 1, 3-4) ("For each . . . statement, the government should indicate the exact wording of the statement, the identity of the declarant, the

17

identity of the person to whom the statement was directed, and the date and . . . location of when and where the statement was made."). The Government responds that it only anticipates offering coconspirator statements via witness(es) that it has not yet identified and that, once the Government releases the identit(ies) of the witness(es), the coconspirator statements will be "identified." (United States' Omnibus Resp. at 31). The Government also argues that it is sufficient for a single [FBI] agent to summarize the coconspirator statement(s) at the *James* hearing. (*Id.* at 33-34).

The Tenth Circuit has a strong preference for *James* hearings, and the Government acknowledges this preference. (United States' Omnibus Resp. at 31). Accordingly, the Court will grant Defendants' motion in part and conduct a *James* hearing thirty days prior to the actual trial. Of course, because this case involves the alleged conspiratorial murder of a "snitch," concern for the safety of any "source" is of utmost importance. Consequently, the Court will allow the Government to proffer its evidence via one summary witness. Though the Court acknowledges that the Tenth Circuit has expressed some reservation about the use of summary witnesses, the Government's submission of a detailed supplemental brief ten days prior to the *James* hearing will address the Tenth Circuit's concerns,[5] while also providing the defense with the specifics they seek. The United States is hereby instructed to:

> file a supplemental brief identifying the summary witness; specifically identifying each and every coconspirator statement it intends to offer at trial as evidence against Defendants pursuant to Fed. R. Evid. 801(d)(2)(E); and stating how each proffered statement satisfies the requirements of Rule 801(d)(2)(E). Specifically, with respect to each alleged coconspirator statement, the United States must indicate: a) the identity of the coconspirator who made the alleged statement; b) the identity of the person or persons to whom the coconspirator statement was made; c) the identity of the witness who will testify at trial about the coconspirator statement; d) the content of the coconspirator statement; e) when the statement was made; f) how the

---

[5]  Moreover, the Court notes that the Government indicated at oral argument that it does not expect extensive use of coconspirator statements.

statement is in the course of the alleged conspiracy; and g) how the statement is in furtherance of the alleged conspiracy. Additionally, the United States must identify the independent evidence it intends to offer in support of admission of the alleged coconspirator statements.

*See United States v. Baines*, No. 06-1797, at 2 (D.N.M. Oct. 3, 2006) (order granting motion for pretrial hearing to determine admissibility of alleged coconspirators' statements) (brackets omitted). Lastly, I will also require both parties to submit proposed findings of fact and conclusions of law to the Court on the date of the *James* hearing.

To avoid premature disclosure of coconspirator statements, all requests for a trial continuance must be submitted prior to the due date of the supplemental brief. As an extra order of precaution, the Court reminds all parties that all disclosures relating to the *James* hearing are subject to the Court's forthcoming protective order.

### G. Defendants' Motion for the Automatic and/or Early Production of Jencks/Rule 26.2 Statements and Memorandum in Support (Doc. 133).

Defendants request disclosure of Jencks/Rule 26.2 material 30 days prior to trial, or, in the alternative, for an order requiring the automatic production of Jencks/Rule 26.2 statements of all government witnesses and automatic trial recesses to review such statements. The United States opposes disclosure of such material more than five working days before trial.

"The Jencks Act prohibits the pretrial discovery of statements made by prospective government witnesses." *United States v. Smaldone*, 544 F.2d at 461. *See also United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only *after* the witness has testified on direct examination at trial."); *United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994) ("The district court may not require the government to produce Jencks Act material relating to one of its witnesses until *after* the witness has testified). The terms of the statute itself thus limit

a court's ability to order pre-trial disclosure of witness statements.  *See United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988) (stating that courts cannot disregard congressional mandate in Jencks Act); *United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir. 1985) ("The trial court cannot compel disclosure of Jencks material at any earlier point.").

The Government has voluntarily agreed to early disclosure in the interest of avoiding interruptions and delays at trial.  In light of the United States' concession, I will grant Defendants' motion in part.  The Government must disclose to Defendants its Jencks Act materials no later than five working days prior to the commencement of jury selection.

**H.     Defendants' Motion for Discovery Regarding FBI DNA Test #1 Pertaining to Automated STR Testing (Doc. 134).**

Counsel stated at the hearing that this motion was moot.  Accordingly, this motion is denied.

**I.     Defendants' Motion for Order for Specification of Coconspirator Statements and a Pre-trial Hearing on the Admissibility of Such Statements  (Doc. 135).**

The issues raised in this motion are addressed *supra* in Section III F, in connection with Defendants' Motion for Disclosure of Coconspirators' Statements and for a *James* Hearing and Supporting Authority (Doc. 132).  The same reasoning, rulings and deadlines applied to such motion also apply to the instant motion.

**J.     Defendants' Motion and Supporting Memorandum for Discovery of Records or Reports Relating to Facts or Data Underlying Expert Opinions  (Doc. 137).**

Defendants request documents relating to government expert witnesses.  Defendants also request a copy of the raw data captured in a videotape from the Doña Ana County Detention Center ("DACDC").

The United States has provided the autopsy report and the report relating to the DNA analysis by the FBI lab. The United States anticipates using a videotape expert, but has not

determined the identity of such an expert.  The United States is in the process of copying the raw data from the videotape and anticipates it will be able to provide the raw data by January 25, 2008.

The United States is directed to provide the raw data from the videotape to Defendants by January 25, 2008, and to disclose information regarding the videotape expert as soon as it receives a copy of such information.

### K.    Defendants' Motion for Disclosure of All Photo Books and Photographic Identifications (Doc. 138).

Defendants request "any statements, reports, tapes, field notes, or physical evidence relating to all photographic identifications or attempted photographic identifications of Mr. Cook or Mr. Smalls through the use of a photo book, photo array or individual photographs by any government witness; any and all photo arrays, photo books, or other photographs used by law enforcement agents in interviewing potential witnesses in connection with the investigation of this case."  (Doc. 138.)

To the extent the United States has not disclosed records in possession of the Doña Ana County Sheriff's Office, the DACDC, or the county, it cannot be held as guarantor of their disclosure.  *See United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (no obligation to disclose records in possession of local police department when federal prosecutor had not yet discovered records and did not act in bad faith).

With regard to the photographic identifications discussed in Defendants' Exhibit H, the United States has made a reasonable search and does not believe that it has a copy of that photograph in its possession.  The United States has agreed not to call the person whose interview was discussed in Defendants' Exhibit H as a witness.

21

The United States is unaware of any photographic identifications made by or attempted with persons who have been disclosed as potential witnesses.  In the event the United States discovers any such photographic identification, it must be promptly disclosed.

The United States has not disclosed photographic identifications relating to undisclosed witnesses.  The United States is directed to disclose all photographic identifications relating to its witnesses no later than 30 days prior to the commencement of jury selection.

**L.      Defendants' Motion and Supporting Memorandum to Produce Favorable Evidence and Request for In Camera Review (Doc. 140).**

Defendants have requested various records that are not in the possession of the United States. The United States is directed to request from other agencies documents responsive to Defendants' requests set out in Document 140, Sections b and f, as amended at the hearing of January 11, 2008. The United States will check and confirm that it has provided to Defendants the documents requested in Document 140, Sections j, q, r, and s.

Defendants requested issuance of subpoenas duces tecum, pursuant to Fed. R. Crim. P. 17(c), with respect to the balance of their requests in Document 140, as amended at the January 11, 2008 hearing.

A party seeking subpoenas duces tecum under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)).

22

The United States takes no position on Defendants' requests for subpoenas duces tecum.  I find that Defendants have satisfied these requirements and subpoenas duces tecum may issue with respect to the documents requested in Document 140, Sections a, c, d, e, g, l, m, n, and o, as amended at the hearing of January 11, 2008.

The documents requested in Document 140, Sections h, i, and k will be addressed by separate order.

The request contained in Document 140, Section p., concerns the raw data from the videotape that the United States will produce by January 25, 2008, as discussed in Section III J.

**M.**  **Defendants' Motion for Discovery Regarding FBI DNA Test #2 Pertaining to Automated Real Time PCR Quantitation (Doc. 141).**

Counsel stated at the hearing that this motion was moot.  Accordingly, this motion is denied.

**N.**  **Defendants' Motion Under *Giglio* for Disclosure of Information Concerning Inducements, Incentives, Compensation or Other Assistance Provided to Government Witnesses, as Well as all Information Necessary to Effectively Cross-Examine Government Witnesses (Doc. 143).**

Defendants move for an order requiring the United States to immediately furnish all *Gigilo* material to Defendants.  The United States has agreed to disclose such material 30 days prior to trial.

The precise time at which *Brady* or *Giglio* evidence must be disclosed will depend on the specific nature of the evidence at issue.  *United States v. Beckford*, 962 F.Supp. 780, 788 (E.D. Va. 1997).  Exculpatory evidence will usually require significant pretrial investigation to be useful to a defendant at trial, and thus, disclosure should generally be required well before pure *Giglio* impeachment evidence, which usually does not require substantial time to prepare for its effective use at trial.  *See id.* at 788-89 (requiring production of pure impeachment material at least three days in advance of jury selection).  *See also United States v. Aiken*, 76 F.Supp.2d 1339, 1344-45 (S.D. Fla. 1999) (ordering pure *Giglio* impeachment material to be disclosed 10 days before trial).

23

Generally, a defendant's right to a fair trial will be fully protected if the government discloses *Giglio* impeachment evidence the day the witness testifies, because disclosure at that time will fully allow the defendant to effectively use the information to challenge the veracity of the government's witnesses. *United States v. Higgs*, 713 F.2d 39, 43 (3d Cir. 1983). *See also United States v. Gonzalez-Montoya*, 161 F.3d 643, 649-50 (10th Cir. 1998) (explaining that delayed disclosure of impeachment evidence did not violate *Brady/Giglio* because defendant received evidence in time to use it to impeach witness). Disclosure of *Giglio* material often identifies the witnesses to whom the material relates, and therefore, the court must take into account the risk to witnesses in early disclosure of *Giglio* evidence. *See Beckford*, 962 F.Supp. at 788-89.

Under the circumstances of this case, I find the United States' offer to disclose *Giglio* material 30 days before trial to be appropriate and adequate to allow Defendants to prepare their defense. Accordingly, the United States is directed to furnish all *Giglio* material to Defendants 30 days prior to the commencement of jury selection.

**O.      Defendants' Motion for the Disclosure of Personnel Files and Supporting Authority (Doc. 144).**

Defendants seek disclosure of all personnel and internal affairs files of current or former employees of DACDC who are government witnesses. The United States responds that it does not have access or control over the DACDC, and, to the extent that the United States received copies of documents during its investigation, the United States has disclosed such documents consistent with its discovery obligations.

At the hearing, Defendants requested, in the alternative, issuance of a subpoena duces tecum pursuant to Rule 17(c) covering the subject documents.

24

The United States is directed to request from Doña Ana County all materials in the personnel files of Government witnesses relating to impeachment of such witnesses. In the event that the United States is unable to obtain such materials, the United States must alert the Court and defense counsel of the problem.  In that event, a Rule 17(c) subpoena duces tecum will be allowed.

**P.      Defendants' Motion to Disclose All Evidence of Collaboration Between the U.S. Attorney's Office and Civil Defense Lawyers for the DACDC (Doc. 145).**

Defendants seek disclosure of all communications, including e-mail and letters, between the United States Attorney's Office and Holt & Babington, the civil defense firm hired by Doña Ana County to defend the wrongful death lawsuit filed by the victim's family.  Defendants speculate Holt & Babington may have improperly influenced the charges against Defendants.

According to the United States, the grand jury subpoenaed certain items from the DACDC. Thereafter, the United States contacted the DACDC regarding the interviews of DACDC employees. Attorney Rusty Babington asked to be present at the interviews of DACDC employees. Mr. Babington was advised of the scheduling of the interviews, attended several of the interviews, and was involved in discussions with and requests to DACDC management regarding additional interviews and materials to be produced.  On several occasions, the United States made written requests to Mr. Babington for additional documents and items to be produced by the DACDC.  The United States has provided to Defendants copies of the correspondence with Mr. Babington regarding his representation of the county.  The United States objects to being ordered to do so.

At the hearing, Defendants acknowledged they had no evidence of entanglement.

The United States represented that it has produced all documents responsive to the discovery request.  In the event the United States discovers any additional correspondence between the United

States Attorney's Office and Holt and Babington, it will either disclose it, or submit it for in camera review.

**IT IS THEREFORE ORDERED** that

A.      Defendants' Motion for Disclosure of Prior Acts Evidence (Doc. 127) is **GRANTED**. The United States is directed to disclose any Fed. R. Evid. 404(b) evidence that it intends to offer at trial no later than 40 days prior to the commencement of jury selection.

B.      Defendants' Motion for Access to Jail Cell and Medical Unit (Doc. 128) is **DENIED**.

C.      Defendants' Motion for Bill of Particulars (Doc. 129) is **DENIED**.

D.      Defendants' Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives and Cooperating Individuals (Doc. 130) is **GRANTED** in part and **DENIED** in part.  The United States is directed to furnish all *Giglio* materials no later than 30 days prior to the commencement of jury selection.

E.      Defendants' Motion for Disclosure of Exculpatory Evidence and Notice to the Government of Specific Exculpatory Evidence Requested (Doc. 131) is **GRANTED** in part and **DENIED** in part, consistent with the reasoning and rulings issued herein regarding Defendants' Motion and Supporting Memorandum to Produce Favorable Evidence and Request for In Camera Review (Doc. 140).

F.      Defendants' Motion for Disclosure of Co-Conspirators' Statements and for a James Hearing (Doc. 132) is **GRANTED** in part and **DENIED** in part.  The Court will conduct a *James* hearing 30 days prior to the actual trial.  The Government may proffer its evidence via one summary witness.  The United States is directed to file a supplemental brief, as more fully described in Subsection III F herein, 10 days prior to the *James* hearing.  The parties are directed to submit proposed findings of fact and conclusions of law to the Court on the date of the *James* hearing.  Any

request for a trial continuance must be submitted prior to the due date of the supplemental brief.  All disclosures relating to the *James* hearing are subject to the Court's forthcoming protective order.

G.      Defendants' Motion for the Automatic and/or Early Production of Jencks/Rule 26.2 Statements (Doc. 133) is **GRANTED** in part and **DENIED** in part.  The United States is directed to disclose Jencks Act materials no later than five working days prior to the commencement of jury selection.

H.      Defendants' Motion for Discovery Regarding FBI DNA Test #1 Pertaining to Automated STR Testing (Doc. 134) is **DENIED**.

I.      Defendants' Motion for Order for Specification of Co-Conspirator Statements and a Pre-trial Hearing on the Admissibility of Such Statements  (Doc. 135) is  **GRANTED** in part and **DENIED** in part, as more fully discussed in reference to Document 132.  The same reasoning, rulings, and deadlines applied to Document 132 motion also apply to the instant motion.

J.      Defendants' Motion and Supporting Memorandum for Discovery of Records or Reports Relating to Facts or Data Underlying Expert Opinions  (Doc. 137) is **GRANTED** in part and **DENIED** in part.  The United States is directed to provide the raw data from the videotape to Defendants by January 25, 2008, and to disclose information regarding the videotape expert as soon as it receives a copy of such information.

K.      Defendants' Motion for Disclosure of All Photo Books and Photographic Identifications (Doc. 138) is **GRANTED** in part and **DENIED** in part.  The United States has agreed not to call the person whose interview was discussed in Defendants' Exhibit H as a witness.  If the United States discovers any photo identification relating to disclosed witnesses, it must promptly disclose any such photo identification. The United States is directed to disclose all photo

identifications relating to its witnesses no later than 30 days prior to the commencement of jury selection.

L. Defendants' Motion and Supporting Memorandum to Produce Favorable Evidence and Request for In Camera Review (Doc. 140) is **GRANTED** in part and **DENIED** in part. The United States is directed to request from other agencies documents responsive to Defendants' requests set out in Document 140, Sections b and  f, as amended at the hearing of January 11, 2008. The United States will confirm that it provided the documents requested in Document 140, Sections j, q, r, and s. Rule 17(c) Subpoenas duces tecum may issue with respect to the documents requested in Document 140, Sections a, c, d, e, g, l, m, n, and o, as amended at the hearing of January 11, 2008. The documents requested in Document 140, Sections h, i, and k will be addressed by separate order.

M. Defendants' Motion for Discovery Regarding FBI DNA Test #2 Pertaining to Automated Real Time PCR Quantitation (Doc. 141) is **DENIED**.

N. Defendants' Motion Under *Giglio* for Disclosure of Information Concerning Inducements, Incentives, Compensation or Other Assistance Provided to Government Witnesses, as Well as all Information Necessary to Effectively Cross-Examine Government Witnesses (Doc. 143) is **GRANTED** in part and **DENIED** in part. The United States is directed to furnish all *Giglio* material to Defendants 30 days prior to the commencement of jury selection.

O. Defendant Cook's and Defendant Smalls' Motion for the Disclosure of Personnel Files and Supporting Authority (Doc. 144) is **GRANTED** in part and **DENIED** in part. The United States is directed to request from Doña Ana County all materials in the personnel files of Government witnesses relating to impeachment of such witnesses. In the event that the United

States is unable to obtain such materials, the United States must alert the Court and defense counsel of the problem.  In that event, a Rule 17(c) subpoena duces tecum will be allowed.

P.      Defendant Cook's Motion to Disclose All Evidence of Collaboration Between the U.S. Attorney's Office and Civil Defense Lawyers for the DACDC (Doc. 145) is **GRANTED** in part and **DENIED** in part.  The United States represented that it has produced all documents responsive to the discovery request.  In the event the United States discovers any additional correspondence between the United States Attorney's Office and Holt and Babington, it will either disclose it, or submit it for in camera review.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**