**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                         No. CR 06-2403 RB

PAUL OTHELLO SMALLS,
GLENN DELL COOK, a/k/a "Deuce,"
and WALTER MELGAR-DIAZ

        Defendants.

**<u>MEMORANDUM OF OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on a Motion for Severance from Co-Defendant (Doc. 183) filed by Defendant Paul Othello Smalls on December 3, 2007.  The United States filed a Response to the motion (Doc. 210) on January 23, 2008.  Defendant Smalls filed his Reply (Doc. 229) on February 14, 2008.  The United States filed its Surreply (Doc. 237) on February 21, 2008.  I heard evidence relating to, and argument on, the motion at a hearing conducted on April 1, 2008.  Having considered the motion, briefs, arguments, statements, and the relevant authority, I find that the motion should be granted, so long as the United States intends to use the transcript of the recorded audio statement of Defendant Cook in its case-in-chief, as further set forth herein.

**I**       **BACKGROUND**

       This case stems from the December 30, 2004 death of Philip Thomas Gantz, a federal inmate, who was incarcerated at the Doña Ana County Detention Center on the date of his death. All three Defendants were locked in a medical unit cell with Mr. Gantz at the time of his death.

On November 16, 2006, a federal grand jury indicted Defendants Paul Othello Smalls, Glenn Dell Cook, and Walter Melgar-Diaz in connection with Gantz's death.  The five-count Indictment charges each defendant with: (1) Conspiracy to Retaliate Against a Witness, Victim or an Informant; (2) Retaliating Against a Witness, Victim or an Informant; (3) Conspiracy to Tamper with a Witness, Victim or an Informant; (4) Tampering with a Witness, Victim or an Informant; and (5) Killing a Person Aiding a Federal Investigation (Doc. 1).

On May 9, 2007, the United States filed a Notice of Intent Not to Seek the Death Penalty (Doc. 93).  Defendant Melgar-Diaz pleaded guilty pursuant to a sealed plea agreement on October 26, 2007 (Docs. 166, 169).

On December 3, 2007, Defendant Smalls filed a motion (Doc. 183) for severance requesting a trial separate from co-Defendant Cook.  Mr. Smalls asserts that severance is required, under *Bruton v. United States*, 391 U.S. 123 (1968), because Mr. Cook has provided statements which inculpate Mr. Smalls on the crimes charged.  Mr. Smalls also claims that severance is required because of the following specific prejudices: (1) unless the trial is severed, Mr. Cook may not provide information which is exculpatory to Mr. Smalls, (2) Defendants Smalls and Cook may provide mutually antagonistic defenses, and (3) there may be a spillover effect due to the overwhelming evidence against Mr. Cook.  Mr. Smalls contends that limiting instructions would be insufficient to cure any prejudice.  Counsel for Mr. Smalls argues that counsel for either of the Defendants, if one co-Defendant chooses to testify, but the other co-Defendant chooses not to, would be obligated to comment upon the non-testifying co-Defendant's silence and, therefore, severance is required.

On January 23, 2008, the United States filed a Response (Doc. 210) to Defendant Smalls'

Motion to Sever and requested that the Court deny the motion.  The United States contends that judicial economy and expediency weigh against severance and that no prejudice has been shown which necessitates a severance of the trial.  The United States also contends that, if there is any prejudice, it can be cured by redaction of the applicable document or with limiting instructions to the jurors at trial.  The United States directs its arguments in this section to the transcript of a recorded audio statement between Defendant Cook and a fellow inmate.  The United States asserts that *Bruton* is not implicated in this case because Defendant Smalls is not specifically named in the statement by Defendant Cook.  The United States further asserts that, even if *Bruton* were implicated, the statement of Defendant Cook could be sufficiently redacted to satisfy any Confrontation Clause concerns.

With regard to the unavailability of exculpatory testimony, the United States argues that Defendant Smalls has not proven (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) the exculpatory nature and effect of the testimony, and (4) the likelihood that co-Defendant Cook would testify, all of which are the threshold showing for severance.

As to the mutually antagonistic defense argument, the United States notes that Defendant Smalls has cited no Tenth Circuit authority justifying severance based on mutually antagonistic defenses and states that, contrary to the requirements for severance, Defendant Smalls has not shown that the sole defense of one of the Defendants is the guilt of the other.  The United States further avers that there is no case law that requires a co-Defendant's counsel to comment on the silence of the other co-Defendant.

With regard to spillover prejudice, the United States asserts that Defendant Smalls has made no showing that there is a serious risk that a joint trial will compromise a specific trial

3

right.

On February 14, 2008, Defendant Smalls filed a Reply to the Response by the United States (Doc. 229).  In that response, Defendant Smalls argues that severance is required because redaction will not cure the prejudice against Defendant Smalls caused by the reference to "the black dude" in Mr. Cook's transcribed audio statement.

With regard to his exculpatory evidence testimony, Mr. Smalls states in his Reply that he "cannot, at th[i]s time, state with absolute certainty, that Glenn Dell Cook will be called as a witness." [Reply at 4-5]   Mr. Smalls further states that "while Mr. Cook has exculpatory evidence that could exonerate Mr. Smalls, it is not possible to determine at this time whether Mr. Cook is willing to come forth at trial." [Reply at 5]

With regard to his mutually antagonistic defenses argument, Mr. Smalls' counsel again asserts that co-Defendant's counsel will comment upon the other co-Defendant's silence, should one of the co-Defendants, but not the other, choose to invoke his Fifth Amendment right against self-incrimination.  Mr. Smalls' counsel additionally stated in the Reply that he is "not at all certain at this time, what Mr. Small's defense will be." [Reply at 5]

On February 21, 2008, the United States filed its Surreply (Doc. 237) to Defendant Smalls' reply.  Citing recent Second Circuit precedent, the United States asserted that the Confrontation Clause did not apply to the recorded statement by Mr. Cook because it was a non-testimonial statement.

## II   STANDARD

Federal Rule of Criminal Procedure 8(b) provides that two or more defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same

series of acts or transactions, constituting any offense or offenses." Fed. R. Crim. P. 8(b). The interests of justice are served in having a joint trial of defendants who are indicted together and are alleged to have participated mutually in charged offenses. *See United States v. Jenkins*, 904 F.2d 549, 557 (10th Cir. 1990). Judicial economy is one of the main justifications behind the preference for joint trials. *See Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Joint trials of defendants who are indicted together are preferred because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Hall*, 473 F.3d 1295, 1301 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993)) (internal quotation marks omitted). Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system. *United States v. Morales*, 108 F.3d 1213 (10th Cir. 1997) (citing *United States v. Hopkinson*, 631 F.2d 665, 668 (1980)). "Courts generally adhere to the principle that those indicted together, especially co-conspirators, should be tried together." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1990), n.16 (quoting 8 J. MOORE, W. TAGGERT & J. WICKER, MOORE'S FEDERAL PRACTICE Para. 14.05, p 14-82 (2 ed. 1989)). *See Jenkins*, 904 F.2d 549, 557 (10th Cir. 1990).

A court, however, may order separate trials if the joinder of defendants appears to prejudice a defendant. *See* Fed. R. Crim. P. 14(a). The decision whether to grant severance lies within the discretion of the trial court. *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). In exercising its discretion, a court "must weigh prejudice to the defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* at 1140 (quoting *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.

1979))(citation and internal quotations omitted).  Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing a real prejudice to his case. *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007) (citing *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984)); *See United States v. Dirden*, 38 F.3d 1131, 1140-41 (10th Cir. 1994) (noting that movant must show "more than a better chance of acquittal or a hypothesis of prejudice, he must, in fact, show real prejudice.") (quoting *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993))(citation omitted).  In the context of conspiracy, severance will rarely, if ever, be required.  *United States v. Williams*, 1993 U.S. Dist. LEXIS 9973 (D. Kan. 1993) (citing *U.S. v. Searing*, 984 F.2d 960, 965 (8th Cir. 1993)).  "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993).  Rather, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Id.* at 539.  *See United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007); *United States v. Pursley,* 474 F. 3d 757, 765 (10th Cir. 2007).

**III.    ANALYSIS**

From the summary of the United States' case, it appears that the evidence against each co-Defendant is largely the same.  This is not a complex case; the evidence is overlapping and intertwined.  The incident arises from the same course of conduct and a single scheme.  All of the same actors are involved and all actions took place on or about the same date.  Additionally, all three Defendants were charged together.  Separate trials thus will be highly duplicative.  A

second trial in this matter would strain judicial resources and result in additional inconvenience, costs and trauma to witnesses by having to testify a second time.

Before making my decision, however, I must compare the judicial economy considerations with the likelihood of prejudice to the Defendants in a joint trial.

### A.      Confrontation Clause of the United States Constitution

Defendant Smalls asserts that the admission of the statements of Defendant Cook at trial would violate the Confrontation Clause of the U.S. Constitution, and, therefore, severance is required.  Defendant Smalls has specifically and only identified the reference in Defendant Cook's transcribed audio recording to "the black dude" and "we" as the references which he asserts cause this violation.  Mr. Smalls' argues that redaction of the transcribed audio recording would be insufficient to prevent the potential prejudice to him caused by those references. Defendant Smalls also claims that other statements by Defendant Cook may be exculpatory if Mr. Smalls, at a separate trial, is able to admit the statement into evidence and cross-examine Defendant Cook with regard to those statements.

The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. CONST. amend VI.  The right of confrontation includes the right to cross-examine witnesses. *Richardson v. Marsh*, 481 U. S. 200, 206, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)(citing *Pointer v. Texas*, 380 U.S. 400, 404, 406-407 (1965)).

### 1.      Inculpating Statements

Defendant Smalls argues that pursuant to the holding in *United States v. Bruton*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968),  he and Mr. Cook are entitled to have their trials

severed.  In *Bruton*, the Supreme Court held that a defendant is deprived of his rights under the

Confrontation Clause when his co-defendant's confession, which incriminates both defendants,

is introduced at their joint trial, even if the jury is instructed to consider that confession only

against the non-testifying co-defendant.

The prosecution argues that, prior to considering the *Bruton* issues, I must look to the

Confrontation Clause itself.  The Supreme Court has held that the initial inquiry under the

Confrontation Clause is whether the statement at issue is testimonial. *See Davis v. Washington*,

547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).  In *Crawford v. Washington*, 541 U.S.

36 (2004), the Supreme Court held that the admission of testimonial statements of a witness who

did not appear at trial violates the Confrontation Clause, unless the witness was unavailable to

testify and the defendant had a prior opportunity for cross-examination.  *See id.* at 68.  A

statement is testimonial if a reasonable person in the position of the declarant would objectively

foresee that his statement might be used in the investigation or prosecution of a crime.  *United

States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005).  The Confrontation Clause of the U.S.

Constitution does not apply to non-testimonial statements. *See Davis v. Washington*, 547 U.S.

813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

Before considering this matter further, it is important that I set forth the facts surrounding

the statement of Mr. Cook which is at issue.  While incarcerated, Mr. Cook spoke with another

inmate about the night of Mr. Gantz's death.  In that conversation, Mr. Cook admitted to killing

Mr. Gantz and implicated Mr. Smalls and Mr. Melgar-Diaz as being involved with the death.

Mr. Smalls and Mr. Melgar-Diaz were not present during that conversation.  Unbeknownst to

Mr. Cook, the fellow inmate was wearing a recording device.  There was no police interrogation

of Mr. Cook.  Police or government officials were not present and did not participate in the conversation.

The Supreme Court has analyzed co-defendant statements with regard to them being testimonial or non-testimonial when the police or other government officials have been directly involved in obtaining and receiving the statements.  *See Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).  However, the Supreme Court, since *Bruton*, has left undecided whether the *Crawford* and *Davis* analyses applies in cases, such as this one, where one defendant has made a non-testimonial statement which incriminates a co-defendant.  The circuit courts also have not provided clear, consistent guidance relating to this scenario.  While the courts in some circuits, before proceeding to an analysis under *Bruton*, have incorporated into the Confrontation Clause analysis an initial determination of whether a statement is testimonial or non-testimonial, the Tenth Circuit has not followed suit.  *See United States v. Nash*, 482 F.3d 1209 (10th Cir. 2007); *See also United States v. Williams*, 506 F.3d 151 (2nd Cir. 2007); *United States v. York*, 2007 WL 1343801 (E.D. Mich. 2007); *McCullock v. Horel*, 2008 WL 755919 (C.D. Cal. 2008).

In *United States v. Nash*, 482 F.3d 1209 (10th Cir. 2007), co-defendant Mr. Kinchion made several non-testimonial statements to other individuals regarding his and Mr. Nash's participation in drug trafficking and related firearm activities.  Without objection by Mr. Nash, all of the statements were admitted as evidence at trial.  Both Mr. Kinchion and Mr. Nash were convicted.  Mr. Nash appealed his conviction stating that the statements should not have been

admitted at trial because they violated his Confrontation Clause rights under *Bruton*.[1]  Without

addressing *Crawford* or *Davis* or making any determination with regard to whether the statement

was testimonial or non-testimonial, the court agreed that the admission of the statements at trial

violated the rule of *Bruton*, and, ultimately, Mr. Nash's rights under the Confrontation Clause.

For reasons irrelevant to our case, the court nevertheless held that the admission of the

statements was harmless error.

      Our case is similar to that in *Nash* in that one Defendant, Mr. Cook, has made a recorded

statement to another individual and the statement inculpates all of the Defendants.  Mr. Smalls

was not present during Mr. Cook's statement and did not participate in the conversation between

Mr. Cook and the fellow inmate.  Analyzing these few facts, the statement could be quite

prejudicial to Mr. Smalls at trial.  Mr. Melgar-Diaz, the third Defendant, has provided to the

Federal Bureau of Investigation at least two confessions of the murder of Mr. Gantz.  In those

confessions, Mr. Melgar-Diaz implicates both Mr. Cook and Mr. Smalls as participants in Mr.

Gantz's death.  Mr. Cook's recorded statement corroborates Mr. Melgar-Diaz's statement of Mr.

Cook's participation in Mr. Gantz's death.  Mr. Smalls, so far as the Court is aware, has not

made any such corroborating statement.  Notwithstanding that neither counsel has argued

whether the statement of Mr. Cook is reliable or trustworthy, I have determined that the

statement does not bear any indicia of reliability or trustworthiness because the statement was

recorded while Mr. Cook was in the detention center and was engaged in a casual discussion

with another inmate.  Nonetheless, I do believe there is a significant likelihood that Mr. Smalls

---

[1]     The Court found that, although he did not object at trial to the admission of the statements, Mr. Nash preserved his right to pursue this claim when he earlier filed a pretrial motion to sever, which was denied by the district court.

could be convicted based on the admission of the corroborating recorded statement of Mr. Cook which implicates Mr. Smalls, regardless of its reliability or trustworthiness.

Following Tenth Circuit precedent, I therefore conclude that, because Mr. Smalls could be convicted on the basis of Mr. Cook's unconfronted, uncross-examined statement bearing no indicia of reliability or trustworthiness, no determination regarding whether the statement is testimonial or non-testimonial is necessary.  If Mr. Cook chooses not to testify, the admission of his recorded conversation with another inmate would violate Mr. Smalls' Sixth Amendment Confrontation Clause rights as protected by the rule in *Bruton*.

*Bruton*, however, did not mandate that defendants in joint trials involving *Bruton* problems shall have separate trials. *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990); *Spears v. Mullins*, 343 F.3d 1215, 1235 (10th Cir. 2003).  "*Bruton* only requires that in a joint trial a defendant must be given an opportunity to cross-examine his co[-]defendant when the government introduces a co[-]defendant's confession that incriminates the defendant."  *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990).   "Of course, if the district court grants a motion to sever, *Bruton* problems will never arise."  *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990).  For *Bruton* to apply, a co-defendant's statement must be clearly inculpatory standing alone. *See United States v. Nash*, 482 F.3d 1209 (10th Cir. 2007); *United States v. Verduzco-Martinez*, 186 F.3d 1208 (10th Cir. 1999).  Thus, there is no *Bruton* problem when the statement was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *See Richardson v. Marsh*, 481 U.S. 200, 208, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987).

The statement of Mr. Cook at issue makes several references to "the black dude."  There

11

were only four individuals in the locked cell:  the white man who died, a Hispanic man, Mr.

Melgar-Diaz, and two black men, Mr. Cook and Mr. Smalls.  The statement referring to "the

black dude" was made by Mr. Cook.  Although the statement does not implicate Mr. Smalls on

its face, because the only other black man in the cell was Mr. Smalls, the reference to "the black

dude" could only mean Mr. Smalls.

There are also references to "we", and variations thereof, scattered throughout the

transcribed audio statement.  There were only four people in a locked cell.  Mr. Cook remarks in

the statement that all were involved.  The references to "we" appear to be references to all of the

remaining living individuals in the cell.  Again, while the statement does not name Mr. Smalls

specifically, the statement nevertheless directly incriminates Mr. Smalls.  The statement violates

the rule of *Bruton*.

Where a *Bruton* situation exists, the court may protect the defendant's Sixth Amendment

rights by (1) excluding the statement, (2) severing the trial, or (3) redacting the statement to

avoid allusion to or overt implication of the other defendant, combined with the use of limiting

instructions.  *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001).  Severance or exclusion may

be required where the admission of the redacted statement distorts the meaning of the statement

or excludes information substantially exculpatory of the declarant.  *See United States v.

Comeaux*, 955 F.2d 586, 590 (8th Cir. 1992).  It is the court's responsibility to decide whether

the risk of prejudice caused by *Bruton* issues is high enough to justify severance.  *See Zafiro v.

United States*, 506 U.S. 534, 539,113 S. Ct. 933, 122 L. Ed. 2d 317 (1993) (expressly cautioning

that risk of prejudice warranting severance could occur where *Bruton* issues arise).

Considering the three options, I do not believe that excluding the statement from the trial

is a viable choice as, to the United States, the statement may be a valuable piece of evidence in support of its case.  Further, the United States has not indicated a willingness to exclude the statement from their case-in-chief.  I am, therefore, left with the option of allowing the use of redacted statements at trial or severing the trial.

A court's task is to determine, on a case-by-case basis, whether the redacted statements are the sort of powerfully, facially, or directly incriminating statements that *Bruton* and its progeny concluded a jury could not put out of mind, even when given proper limiting instructions.  *See United States v. Lage*, 183 F.3d 374, 386 (5th Cir. 1999).  In *Richardson v. Marsh*, 481 U.S. 200, 212, 208, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)*,* the Supreme Court held that "the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with proper limiting instructions, when . . . the confession is redacted to eliminate not only the Defendant's name, but any reference to his or her existence."  The admission of such a statement is constitutional even when different evidence otherwise links the co-defendant to the statement.  *See Richardson* at 208-211.

The Supreme Court further articulated the criterion for proper redaction in *Gray v. Maryland*, 523 U.S. 185, 192, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998), stating that "[r]edactions that simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications of alteration leave statements, that, considered as a class, so closely resemble *Bruton*'s unredacted statements as to warrant the same legal result."  The Supreme Court in *Gray* noted that *Richardson* depends in significant part upon the kind of, not the simple fact of, inference. *Id.* at 196.  The Supreme Court distinguished the facts in *Gray* from those in *Richardson* noting that, in *Gray*, the redacted confession with the

13

blank prominent on its face involved statements that "obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id. at 195*. The Supreme Court explained that redactions using a blank space or the word "delete" can normally be further redacted. *See id.* at 195.

Since *Gray*, the Tenth Circuit has held that, "where a defendant's name is replaced with a neutral pronoun or phrase there is no *Bruton* violation, provid[ed] that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury." *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999). If, however, it is obvious from consideration of the confession as a whole that the redacted term refers to the defendant, then the Confrontation Clause problem remains, regardless of whether the redaction was accomplished by the use of a neutral pronoun or otherwise. *See id.* Other courts have also recognized that there are circumstances where no redaction or neutral pronoun substitution will suffice to eliminate a Sixth Amendment violation. *See Stanford v. Parker*, 266 F.3d 442, 456-57 (6th Cir. 2001) (concluding that Confrontation Clause was violated because "other person" in confession would not prevent jury from inferring confession referred to defendant); *United States v. Hoover*, 246 F.3d 1054, 1059 (7th Cir. 2001) (holding that "incarcerated leader" clearly referred to defendant in violation of *Bruton* because it was no more than obvious pseudonym and that to "adopt a four-corners rule would be to undo *Bruton* in practical effect"); *United States v. Richards*, 241 F.3d 335, 341 (3d Cir. 2001) (determining that Confrontation Clause was violated by admission of co-defendant's confession that referred to "friend" and "inside man"); *United States v. Gonzalez*, 183 F.3d 1315, 1321-22 (11th Cir. 1999)

14

(concluding that there was a Confrontation Clause violation because prosecutor's presentation of redacted confession implicated precise number (four) of confessor's co-defendants), *overruled on other grounds*, *United States v. Diaz*, 248 F.3d 1065 (11th Cir. 2001); *United States v. Payne*, 923 F.2d 595, 597 (8th Cir. 1991) (holding that confession indicating plan to help "someone" escape from prison violated Confrontation Clause because everyone at trial knew that "someone" meant defendant).  Severance is required only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant. *United States  v. William*s, 1993 U.S. Dist. LEXIS 9973 (D. Kan. 1993) (citing *United States v. Comeaux*, 955 F.2d 586, 590 (8th Cir.)) (internal quotations omitted).

I have carefully considered the statement at issue in light of the facts of this case, specifically that the three defendants were locked in a cell together with Mr. Gantz and were the only other individuals in the cell with Mr. Gantz at the time of his death.  I have not received any indication from the United States that it does not intend to use this recorded statement in its case-in-chief.  The recorded statement of Defendant Cook directly incriminates Defendant Smalls, despite Mr. Smalls' name not being specifically mentioned.  Even though the references to "the black dude" could have been successfully and relatively non-detectably redacted, the non-extractable and varying references to "we" throughout the statement make it impossible to fairly redact the statement without it being evident to the jury and distorting the meaning of the conversation.  Accordingly, although judicial economy weighs in favor of not severing the trial of Mr. Cook and Mr. Smalls, I believe that due to the prejudice to Mr. Smalls which would occur upon the admission of this statement as evidence at trial, I do not have a choice; so long as the United States intends to use the recorded statement in its case-in-chief, the trial of Defendant

Cook and Defendant Smalls shall be severed.

While my decision with regard to the severance is based on my analysis above, I will continue by addressing the other issues raised by Mr. Smalls in his motion.

### 2. Exculpating Statements

Defendant Smalls argues that his trial must be severed in order to allow Mr. Cook to testify on his behalf and to provide exculpatory statements upon cross-examination with regard to Mr. Cook's out-of-court statements.

"When an asserted reason for severance is the need for a co-defendant's testimony, the moving defendant must show (1) that he would call the co-defendant at the severed trial, (2) that the co[-]defendant would in fact testify, and (3) that the testimony would be favorable to the moving defendant." *United States v Dickey*, 736 F.2d 571, 590 (10th Cir. 1984)(quoting *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977)).  On the second element, a bare assertion or chance that testimony may be introduced is insufficient to show prejudice.  *See United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir. 1985).  On the third element, the "defendant must show that more than a vague and conclusory statement . . . of . . . negligible weight or probative value would be given to demonstrate a co-defendant's testimony would be favorable." *Id.* (quoting *United States v. Parodi*, 703 F.2d 768, 780 (4th Cir. 1983) (internal quotations omitted). Any willingness of a co-defendant to testify cannot be conditioned on the co-defendant being tried first.  *Id.* (citing *United States v. Parodi*, 703 F2d 768, 779 (4th Cir. 1983))

The Court in *United States v. McConnell*, 749 F.2d 1441, 1446 (10th Cir. 1984), expanded the number of factors to be considered relevant when determining whether to sever a trial based on a claim of exculpatory evidence to include:

"(1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; (2) the significance of the testimony in relation to the defendant's theory of defense; (3) the exculpatory nature and effect of such testimony; (4) the likelihood that the co-defendant's testimony would be impeached; (5) the extent of prejudice caused by the absence of the testimony; (6) the effect of a severance on judicial administration and judicial economy; [and] (7) the timeliness of the motion."

Defendant Smalls has not attempted to evaluate the need for severance under the factors presented in *Dickey*. In fact, Defendant Smalls has disclosed that he cannot state with certainty that Mr. Cook will be called as a witness or that Mr. Cook would be willing to come forth on his behalf at trial. Mr. Smalls also has not demonstrated that testimony by Mr. Cook would be favorable to him. Without the elements of the test in Dickey being met, it is unnecessary for the Court to delve into the expanded factors set forth in *McConnell*. Consequently, Defendant Smalls has failed to demonstrate that severance is appropriate or that he would be unfairly prejudiced without the use of the exculpatory statements of Mr. Cook at trial.

### B.      Mutually Antagonistic Defenses

Defendant Smalls states that although his defense has not yet been determined, the fact that there are potentially mutually antagonistic defenses to be presented at trial require the trial to be severed.

Severance is not mandated when co-defendants have conflicting defenses. *United States v. Larsen*, 175 F. App'x 236 (10th Cir. 2006); *See Zafiro v. United States*, 506 U. S. 534, 538, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). "Mutually antagonistic defense are not prejudicial per se." *Zafiro v. United States,* 506 U.S. 534, 538, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Defenses are mutually antagonistic if "the conflict between co[-] defendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of

17

the other." *United States v. Pursley,* 474 F. 3d 757 (10th Cir. 2007) (quoting *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994)).  Otherwise stated, it must be shown that "the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other." *Id.* at 765 (citing *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989)).  Prejudice is not created solely by one defendant seeking to cast blame on the other.  *United States v. Walters*, 188 F.R.D. 591, 600 (D. Kan. 1999).

The Tenth Circuit has set forth a three step analysis to determine whether mutually antagonistic defenses require severance.  "[First,] the conflict between co-defendant defenses must be such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994)(quoting *United States v. Swingler*, 758 F.2d 477, 495 (10th Cir. 1985)).  In other words, the defenses presented must be "so antagonistic that they are mutually exclusive." *See United States v. Peveto*, 881 F.2d 884, 857 (10th Cir. 1989)(citing *United States v. Esch*, 832 F.2d 531, 537 (10th Cir. 1987)).  Second, because mutually antagonistic defenses are not prejudicial per se, a defendant must further show a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Pursley,* 474 F. 3d 757, 765 (10th Cir. 2007) (citing *Zafiro v. United States,* 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993)) (internal quotation marks omitted).  Third, if the first two factors are met, the trial court exercises its discretion and weighs the prejudice to a particular defendant caused by joinder against the obviously important consideration of economy and expedition in judicial administration." *Id.* (citing *United States v. Peveto*, 881 F.2d 884, 857

18

(10th Cir. 1989)) (internal quotations and alterations omitted).

Rule 14 does not require severance even if prejudice is shown, but instead permits the district court in its sound discretion to tailor the relief to be granted, if any. *See Zafiro v. United States*, 506 U.S. 534, 538-539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993).  Separate trials are not required merely because severance might have offered the defendant a better chance for acquittal or have aided his attempt to cast blame on co-defendants. *See United States v. McClure*, 734 F.2d 484, 488 (10th Cir. 1984); *United States v. Calabrese*, 645 F.2d 1379, 1384-85 (10th Cir. 1981).

Analyzing Mr. Smalls' argument using the process set forth by the Tenth Circuit, we are halted at the first step--"the conflict between co-defendant defenses must be such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." Defendant Smalls has stated that his defense has not yet been determined.  Moreover, I have not been advised of the defense arguments of Mr. Cook.  Accordingly, I am unable to order severance based on this claim as I am unable to compare the defenses of the co-Defendants or assess the possibility of any resulting prejudice to the Defendants from their planned defenses.

Defendant Smalls' counsel focuses much of his argument on his belief that if Mr. Cook did not testify, and Mr. Smalls did testify, it is Mr. Smalls' counsel's duty to comment upon Mr. Cook's choice to invoke his Fifth Amendment privilege against self-incrimination by remaining silent.  Mr. Smalls' counsel also argues the reciprocal, that it would be Defendant Cook's counsel's obligation to comment should Mr. Smalls choose not to testify.  I have found no current case law in support of that theory.

"Under no circumstances can it be said that a defendant's attorney is obligated to

comment upon a co-defendant's failure to testify." *United States v. McClure*, 734 F.2d 484, 491

(10th Cir. 1984).  A counsel's comment on a defendant's failure to testify violates the

defendant's Fifth Amendment privilege against self-incrimination. *See Sanchez v. Heggie*, 531

F.2d 964 (10th Cir. 1976) (citing *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct.

1229 (1965)).  "The 'privilege against self-incrimination would be reduced to a hollow mockery

if its exercise could be taken as equivalent either to a confession of guilt or a conclusive

presumption of perjury.'" *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962) (quoting

Justice Clark, in *Slochower v. Board of Higher Education*, 350 U.S. 551, 557, 76 S. Ct. 637, 100

L. Ed. 692 (1956)).  A defendant has a constitutional right not to have his choice to not have

taken the stand commented upon by prosecution or co-defendant or guilt inferred therefrom. *See*

*United States v. McClure*, 734 F.2d 484, 488-492 (10th Cir. 1984).  Consequently, neither

counsel would have a "duty" to point out a co-defendant's choice to invoke his Fifth Amendment

right against self-incrimination by remaining silent.

### C.    Disproportionality of Evidence

Defendant Smalls argues that the overwhelming evidence against Defendant Cook would

have a "spillover" effect on his case causing him prejudice.

"In deciding on a motion for severance, the district court has a duty to weigh the

prejudice resulting from the joint trial of co-defendants against the expense and inconvenience of

separate trials." *United States v. Small*, 423 F.3d 1164 (10th Cir. 2005)(quoting *United States v.*

*Hack*, 782 F.2d 862, 870 (10th Cir. 1986)).  "Neither a mere allegation that defendant would

have a better chance of acquittal in a separate trial, nor a complaint of the "spillover effect" from

the evidence that was overwhelming or more damaging against the co-defendant than against the

moving party is sufficient to warrant severance." *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997) (citing *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989)); *See United States v. Powell*, 982 F.2d 1422 (10th Cir. 1992).

The 10th Circuit has held that when sufficient evidence is presented to connect the defendant to the conspiracy charged, the defendant's argument that severance is required due to the overwhelming evidence against co-defendants is without merit. *United States v. Espinosa*, 771 F.2d 1382, 1409 (10th Cir. 1985) (citing *United States v. Dickey*, 736 F.2d 589-90 (10th Cir. 1984); *United States v. Carter*, 613 F.2d 256, 260 (10th Cir. 1979)). To warrant severance, the prejudice must be of a type against which the court is unable to afford protection. *United States v. Lujan*, 2008 U.S. Dist. LEXIS 3783 (D. N.M. 2008) (citing *United States v. Causey*, 185 F.3d 407, 416-17 (5th Cir. 1999)). To warrant severance, the defendant must show that the spillover prejudice will prevent the jury from individualizing each defendant. *See United States v. Watchmaker*, 761 F.2d 1459, 1476 (11th Cir. 1985).

Defendant Smalls has not articulated any substantive description of the evidence to be presented at trial in order for the Court to evaluate any disproportionality of evidence or "spillover" effect. Further, Defendant Smalls has not described in any detail how the spillover prejudice, if any, would prevent a jury from individualizing each defendant. I am consequently unable to evaluate the merits of the arguments of this element of Defendants Smalls' motion. Severance is not justified based on the submitted averment of disproportionality of evidence.

### D.      Limiting Instructions at Trial

Defendant Smalls argues that limiting instructions at trial would be insufficient to cure any prejudice against him due to his lack of ability to confront the witness with regard to

exculpatory and inculpatory statements, to mutually antagonistic defenses and to the overwhelming evidence against Mr. Cook.

Rather than severing a trial, the court should consider other remedial measures that will minimize the risk of prejudice.  *See United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989). Separate trials will more likely be necessary when the risk of prejudice to a defendant is high. *Zafiro v. United States,* 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993).  However, limiting instructions often will cure any threat of prejudice.  *Id*.  "The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice."  *United States v. Cardall,* 885 F.2d 656, 668 (10th Cir. 1989) (citing *Parker v. Randolph*, 442 U.S. 62, 73, 60 L. Ed. 2d 713, 99 S. Ct. 2132 (1979)).  The court may instruct the jury that it should consider individually the charges against each defendant and the evidence presented and not consider any evidence admitted solely against one defendant against another defendant.  *See Id*.

Although the United States has indicated a willingness to remove through redaction not only the reference to "the black dude" but the words surrounding the reference to "the black dude" in such a manner that its removal would not be apparent to the jury, the references to "we" and similar wording cannot be deleted without indicating to the jury that there has been a removal of text or without distorting the meaning of the statement.  While juries have the capability to follow limiting instructions, I am not convinced that such instruction would be effective in this situation where the wording of the statement would be highly damning to Mr. Smalls.  I agree with Mr. Smalls in that I do not believe that limiting instructions would suffice to eliminate or minimize the prejudice to Mr. Smalls should the United States submit Mr. Cook's transcribed audio statement into evidence during its case-in-chief in a joint trial of Mr. Smalls

and Mr. Cook.

Although most of Defendant Smalls arguments do not justify the severance of his trial from that of Mr. Cook, Mr. Smalls has articulated a severe or compelling prejudice which he will incur in a joint trial should the United States use the recorded audio statement of Mr. Cook in its case-in-chief.

**IT IS THEREFORE ORDERED** that so long as the United States intends to use Mr. Cook's recorded audio statement in its case-in-chief, Defendant Paul Othello Smalls' Motion for Severance of his Trial from that of Glenn Dell Cook (Doc. 193) is **GRANTED**.


_____
UNITED STATES DISTRICT JUDGE