**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                    No. CR 06-2403 RB

PAUL OTHELLO SMALLS,
GLENN DELL COOK, a/k/a "Deuce,"
and WALTER MELGAR-DIAZ

        Defendants.

<u>**MEMORANDUM OF OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Glenn Cook's Supplemental

*Brady* Request No. 1  (Doc. 260) filed on March 28, 2008.  The United States filed a Response to

the request (Doc. 269) on April 10, 2008.  Having considered the motion, briefs, arguments,

statements, and the relevant authority, I find that the motion should be granted in part and denied

in part.

**I**      **BACKGROUND**

This case stems from the December 30, 2004 death of Philip Thomas Gantz, a federal

inmate, who was incarcerated at the Doña Ana County Detention Center on the date of his death.

All three Defendants were locked in a medical unit cell with Mr. Gantz at the time of his death.

On November 16, 2006, a federal grand jury indicted Defendants Paul Othello Smalls, Glenn

Dell Cook, and Walter Melgar-Diaz in connection with Gantz's death.  The five-count

Indictment charges each defendant with: (1) Conspiracy to Retaliate Against a Witness, Victim

1

or an Informant; (2) Retaliating Against a Witness, Victim or an Informant; (3) Conspiracy to

Tamper with a Witness, Victim or an Informant; (4) Tampering with a Witness, Victim or an

Informant; and (5) Killing a Person Aiding a Federal Investigation (Doc. 1).

On May 9, 2007, the United States filed a Notice of Intent Not to Seek the Death Penalty

(Doc. 93).  Defendant Melgar-Diaz pleaded guilty pursuant to a sealed plea agreement on

October 26, 2007 (Docs. 166, 169).

On October 9, 2007, Defendant Cook filed a Motion to Produce Favorable Evidence and

Request for In Camera Review.

Also on October 9, 2007, Defendant Cook filed his Motion under *Giglio* for Disclosure

of Information Concerning Inducements, Incentives, Compensation or Other Assistance

Provided to Government Witnesses, as well as All Information Necessary to Effectively Cross-

Examine Government Witnesses (Doc. 143).

On  January 24, 2008, I ruled on both of these motions (1) stating that the United States

must provide criminal history information to Defendants no later than May 1, 2008, and (2)

directing the United States to furnish all *Giglio* material to Defendants thirty days prior to the

commencement of jury selection.

On  March 28, 2008, Defendant Cook filed a Supplemental *Brady* Request No. 1

asserting that the real name of Walter Melgar-Diaz is Tomas David Gonzales and requesting that

the Government (1) investigate the criminal history of Walter Melgar-Diaz, (2) immediately

produce specific *Giglio* information, (3) provide to Defendant the psychiatric and psychological

reports of Mr. Melgar-Diaz and Tomas David Gonzales, and (4) produce any reports of violence,

assault or threatening behavior by Mr. Melgar-Diaz and Mr. Gonzales while in federal custody.

2

On April 10, 2008, the United States filed a Response (Doc. 269) to Mr. Cook's motion requesting that the Court deny the motion.  The United States objected to being ordered to investigate the criminal history requested by Defendant Cook.  It further stated that it has already disclosed to the Defendants a copy of Mr. Melgar-Diaz's Presentence Report from his 2004 Re-entry case, which included his known criminal history.  The United States also objected to a change in the already established *Giglio* disclosure deadline.  The United States confirmed that it has already disclosed to Defendant Cook the psychiatric and psychological reports and reports of violence, assault or threatening behavior towards staff, inmates, or others while in federal custody relating to Mr. Melgar-Diaz in its possession of which it is aware.  The United States further explained that it will disclose to the Defendants or tender to the Court for inspection any similar additional reports it identifies.  The United States did not dispute that Walter Melgar-Diaz was also known as Tomas David Gonzales.

**II    STANDARD**

Under *Brady* and *Giglio,* the government must furnish to the defense evidence regarding the credibility of government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Impeachment evidence falls under *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence. *United States v. Sullivan*, 919 F.2d 1403, 1427 (10th Cir. 1990) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

"The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  Even where the defendant never requested exculpatory evidence, the government has a duty to volunteer exculpatory evidence. *See Id.* at 433.  "[T]he government

3

typically is the sole judge of what evidence in its possession is subject to disclosure" and it acts at its own peril by failing to comply adequately with an order requiring disclosure of *Brady* material. *United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988). See Kyles*, at 437.  The Supreme Court held in *Brady v. Maryland, 373 U.S. 83, 87 (1963)*, "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  However, there is no *Brady* violation where the defendant knew or should have known of the material, exculpatory information or where the information was available to him from another source. *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

A defendant's allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  The burden is with the defendant to prove the materiality of the undisclosed information. *United States v. Hudson*, 813 F. Supp. 1482, 1490 (D. Kan. 1993); *United States v. Burger*, 773 F. Supp. 1419, 1426 (D. Kan. 1991).   To be "material" for purposes of this rule, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross*, 511 F.2d 757, 763 (5th Cir.).  The materiality requirement typically "'is not a heavy burden;' rather, evidence is material as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Lloyd*, 301 U.S. App. D.C. 186, 992 F.2d 348, 351 (D.C. Cir. 1993) (quoting *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992)).  Basically, the defendant must come forth with facts demonstrating that the

Government has in its possession information which could be helpful to the defense. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citation omitted).  "To require disclosure, the defendant must establish that the evidence sought exists, that it is both favorable and material, and that it has not already been provided." *United States v. Kennedy*, 819 F. Supp. 1510, 1518 (D. Colo. 1993) (citations omitted).  Because the defendants often are unable to "know with certainty what information the government has," courts should strongly encourage liberal discovery. *United States v. Jensen*, 608 F.2d 1349, 1357 (10th Cir. 1979).

 *Brady* requires the government to disclose only the material exculpatory evidence that is in its possession. *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999).  The government does not have an affirmative duty to seek to discover information which it does not possess. *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975)); *United States v. Badonie*, 2005 U.S. Dist. LEXIS 21928 ( D.N.M. 2005) (unpublished); *United States v. Fred*, 2006 U.S. Dist LEXIS 95276 (D.N.M. 2006) (unpublished).  "At the same time, what the government possesses is not determined only from what the prosecution has in its file." *United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994). *See Moore v. Illinois*, 408 U.S. 786 (1972).  "[A] prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case," *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984); neither does the government have an affirmative duty under *Brady* to seek out information that is not in its or its agents' possession.  *See Graham*, 484 F.3d at 415-18 (stating there is no affirmative duty to discover information in possession of independent, cooperating witness and not in government's possession); *United States v. Moore*, 25 F.3d 563, 569 (7th Cir. 1994) (concluding *Brady* was not

violated where both parties learned after trial that government witness had previous conviction for obstruction of justice and government did not possess knowledge of this information until after trial); *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1995) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant."); *United States v. Flores*, 540 F.2d 432, 437 (9th Cir. 1976) (noting that government has no duty to fish through public records equally accessible to defense to collate information). "If a federal prosecutor has knowledge of and access to exculpatory information as defined in *Brady* . . ., then the prosecutor must disclose it to the defense." *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989).  A duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is some reasonable prospect or notice of finding exculpatory evidence. *United States v. Brooks*, 296 U.S. App. D.C. 219, 966 F.2d 1500, 1503 (D.C. Cir. 1992).  However, utter speculation will not give rise to this duty to search. *Id.* at 1503-04.

The precise time at which *Brady* or *Giglio* evidence must be disclosed depends on the specific nature of the evidence at issue.  *United States v. Beckford*, 962 F. Supp. 780, 788 (E.D. Va. 1997).  "A district court [has] general discretionary authority to order the pretrial disclosure of *Brady* material 'to ensure the effective administration of the criminal justice system.'"  *United States v. Giampa,* 904 F. Supp. 235, 281 (D.N.J.1995) (quoting *Government of Virgin Islands v. Martinez,* 847 F.2d 125, 127 (3d Cir.1988)); *see United States v. Starusko,* 729 F.2d 256, 260 (3d Cir.1984); *United States v. Higgs,* 713 F.2d 39, 42 (3d Cir.1983)).  Exculpatory evidence will usually require significant pretrial investigation to be useful to a defendant at trial, and thus, disclosure should generally be required well before pure *Giglio* impeachment evidence, which usually does not require substantial time to prepare for its effective use at trial.  *See id.* at 788-89

6

(requiring production of pure impeachment material at least three days in advance of jury

selection).  *See also United States v. Aiken*, 76 F. SUPP.2d 1339, 1344-45 (S.D. Fla. 1999)

(ordering pure *Giglio* impeachment material to be disclosed 10 days before trial).

Although *Brady* material includes information that may be used to impeach the

credibility of a prosecution witness, the Government is not obligated to disclose *Giglio* material

prior to trial. *Giampa,* 904 F. Supp. at 281.  A defendant's due process rights "will be fully

protected if disclosure is made the day that the witness testifies." *Higgs,* 713 F.2d at 44.  "The

purpose of requiring disclosure of impeachment information is not to assist the defense in a

general pretrial investigation, but to give the defense an opportunity to effectively cross-examine

the Government's witnesses at trial." *Giampa,* at 281 (citing *Higgs* at 44-45).  Disclosure of

*Giglio* material often identifies the witnesses to whom the material relates, and therefore, the

court must take into account the risk to witnesses in early disclosure of *Giglio* evidence.  *See*

*Beckford*, 962 F. Supp. at 788-89.

## III.    ANALYSIS

### A.    Criminal History

Defendant Cook requests that the Government make inquiry into its various

computerized search capacities for Tomas David Gonzales, which Defendant asserts is the real

name of Defendant Walter Melgar-Diaz.  Defendant Cook further requests that the Government

disclose the entire criminal history of Mr. Gonzales, as it might relate to the benefits accruing to

him under his plea agreement with the Government as well as revealing incidents of violence

towards other inmates or incidents reflecting dishonesty and lack of truthfulness.

Criminal histories and other background information regarding government witnesses

that are not within the government's custody or control are not discoverable.  *See Flores*, 540

F.2d at 437-38.  The government generally does not have a duty under *Brady* to seek out

information that is not in its possession, including a witness's criminal history.  *United States v.*

*Jones*, 34 F.3d 596, 599 (8th Cir. 1994).  A prosecutor has no duty to undertake a fishing

expedition in other jurisdictions to find impeaching evidence.  *Id.*; *Flores*, at 437.  *Brady* does

not require the government to conduct an investigation for the defense.  *United States v. Senn*,

129 F.3d 886, 893 (7th Cir. 1997).   The United States does, however, have a duty to learn of

favorable evidence, including criminal histories of its witnesses, that is known to others acting

on its behalf.  See *United States v. Combs*, 267 F.3d 1167, 1175 (10th Cir. 2001) (quoting *Kyles*,

514 U.S. at 437-38).  The United States thus has a duty to learn of criminal history information

known by the FBI.  *See Senn*, at 893.  A number of circuit courts have held that prosecutors

suppress evidence by failing to search for criminal histories of witnesses that are readily

available through routine investigation of other government agencies or databases.  *Hollman v.*

*Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) ("Thus, we, along with several other circuits have

imposed upon the prosecution a duty to search accessible files to find requested exculpatory

material."); *East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995) (citing *United States v. Auten*, 632

F.2d 478, 480 (5th Cir. 1980)) (explaining that prosecution is deemed to have knowledge and

possession of its witnesses' criminal history information that would be revealed by routine check

of FBI and state databases, including a witness's state rap sheet, where such information is

readily available); *United States v. Brooks*, 966 F.2d 1500, 1502-04 (D.C. Cir. 1992) (explaining

that prosecutor has duty to search files of other agencies closely aligned with prosecution where

there was explicit request for apparently easy examination and non-trivial prospect that

examination might yield material exculpatory information); *United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991) (holding that federal prosecutor's failure to conduct search of local Virgin Islands records to verify witness's criminal background constituted suppression under *Brady* because information was readily available to it).  *See Combs*, 267 F.3d at 1175. "However, where the government has diligently searched, no *Brady* violation will be found." *Hollman*, 158 F.3d at 181.  *See United States v. Young*, 20 F.3d 758, 764-65 (7th Cir. 1994).

In my Order of January 24, 2008, I directed the Government to provide criminal histories to the Defendants no later than May 1, 2008.  Because the United States may be deemed to have constructive knowledge of the criminal history of Tomas David Gonzales in FBI databases or in other databases that are readily available to it, I will grant Defendant's motion to have the United States search the databases, which are readily available to it, with regard to that criminal history. The United States shall then provide to Defendant a copy of any criminal record pertaining to Tomas David Gonzales available in the databases which has not already been provided, no later than August 8, 2008.

### B.    Giglio Information

Defendant request immediate disclosure of all *Giglio* material.  The date for delivery of *Giglio* material was established in my order of January 24, 2008, because the United States was willing to provide the material prior to the date of trial.  The Defendant has not shown any prejudice or provided any justification for why such information should be provided at an earlier date.  Accordingly, he is not entitled to receive the *Giglio* material any earlier than the date already set in my Order.  I deny Defendant's request for earlier disclosure.

### C.      Psychiatric reports

Defendants requests all psychiatric and psychological reports and evaluations on Melgar-Diaz that may be generated in connection with his treatment at a Federal medical center.

The government does not have the duty to search mental records of its witnesses when it has no reason to believe that they would contain impeachment evidence and when the records are not readily accessible.  *See East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995) (holding that duty to seek out witness's criminal history does not extend to witness's mental history because mental records are not generally readily accessible); *United States v. DiPaolo*, 804 F.2d 225, 230 (2d Cir. 1986) (explaining that government has "no obligation to seek out" evidence of psychiatric or psychological treatment of witness); *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981) (same).  Nevertheless, a witness's mental health condition that casts doubt on the accuracy of his testimony may be material impeachment evidence, *see East*, at 1003, and, if known, should be disclosed to the defense.  A defendant should obtain for himself exculpatory evidence not possessed by the government but of which he is aware.  *Riley* at 1377 (citing *Maglaya v. Buchkoe*, 515 F.2d 265, 268 (6th Cir. 1975)).

The United States acknowledged its continuing obligation under *Giglio* to disclose psychiatric and psychological reports of Walter Melgar-Diaz.  These reports would include those psychiatric and psychological reports for Tomas David Gonzales, as an alias of Walter Melgar-Diaz.  The Court has no reason to believe that the United States has not provided or will not provide this information.  Accordingly, I deny Defendants motion as to this matter.

### D.      Reports of Violence, Assaults and Threatening Behavior

Defendant  requests all reports of Melgar-Diaz's violence, assaults, or threatening

behavior towards staff, inmates, or others while housed in Federal custody.

The Government asserts that is has disclosed or will disclose the reports relating to Walter Melgar-Diaz's violence, assault or threatening behavior towards staff, inmates or others while in federal custody in its possession of which it is aware.  The Government further states that if additional reports are identified, they will be disclosed to the defendant or tendered to the Court for inspection.

The United States acknowledges its obligation to disclose this information to Defendant. The Court has no reason to believe that the United States has not provided or will not provide the information it has in its possession, including any reports, pertaining to Tomas David Gonzales, as an alias for Walter Melgar-Diaz, within the appropriate time frames set by the Court.  I, therefore, deny Defendant's motion as to this matter.

**IT IS THEREFORE ORDERED** that Defendant Cook's Supplemental *Brady* Request No. 1 is **GRANTED** in part and **DENIED** in part.  The motion is granted in that the Government must provide any information regarding the criminal record of Tomas David Gonzales, which has not already been provided, to Defendants no later than August 8, 2008.   The remaining parts of the motion are denied.

_____
UNITED STATES DISTRICT JUDGE